**IN THE COURT OF APPEALS OF IOWA**

No. 16-0446
Filed May 11, 2016

**IN THE INTEREST OF E.V. and P.S.-V.,**
**Minor Children,**

**A.V., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Clarke County, Monty W. Franklin, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Jenna K. Lain of the Law Office of Jenna K. Lain, Corydon, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Mary A. Triick, Assistant Attorneys General, for appellee State.

Marc A. Elcock of Elcock Law Firm, Osceola, for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

A mother appeals the termination of her parental rights to her sons, E.V. and P.S.-V.[1] The mother has failed to make the changes necessary to provide for the long-term needs and safety of the children. We therefore affirm termination of her parental rights.

**I. Background Facts and Proceedings.**

A.V. is the mother of E.V., born in June 2009, and P.S.-V., born in December 2011. The department of human services (DHS) became involved with the family when E.V. tested positive for methamphetamine after the mother left him in the care of his grandfather, who exposed him to the drug. DHS completed a child-abuse assessment, which was founded. E.V. was adjudicated a child in need of assistance (CINA) on September 30, 2013, and P.S.-V. was adjudicated CINA on March 26, 2014.

Due to the mother's inability to provide a safe and consistent environment for the children, E.V. was removed from her care on January 29, 2014, and P.S.-V. was removed on March 26, 2014. The mother frequently moved the children from one living arrangement to the next, exposed the children to inappropriate individuals, depended on others to provide for her and her children, did not address her own mental health issues, and failed to adequately supervise and control E.V.'s serious misbehavior.

E.V.—who was six at the time of the termination hearing on December 7, 2015—is diagnosed with ADHD and oppositional defiant disorder. He exhibits

---

[1] E.V.'s father's parental rights were also terminated. He does not appeal. P.S.-V. is currently in the care of his father.

mood instability, impulsive and defiant behavior, and extreme bouts of aggression, which often manifest in violence. The mother could not prevent E.V. from hitting, kicking, and choking P.S.-V. when P.S.-V. was just an infant. While in the custody of DHS, E.V. also attempted to choke other younger children and damaged the seats of his foster parents' car with a knife. Despite E.V.'s severe behavioral issues, the mother testified that she believed E.V. was diagnosed only with ADHD and did not know what medications E.V. was currently prescribed.

Throughout the pendency of this matter, the mother lived in nineteen different locations. The mother has a very sporadic employment history. At the time of the termination hearing, she was employed at a restaurant but was on medical leave. The mother did remain in the same community in only two different homes in the year leading up to the termination hearing. However, her rent and other living expenses are paid by her fiancé, leaving her still reliant on others to survive. In addition to E.V. and P.S.-V., the mother has newborn twins, and the record does not suggest she can independently care for all four children.

As part of a psychological evaluation completed February 21 and May 19, 2014, it was determined that the mother's child-abuse potential was very elevated. The psychological evaluation provided:

> In summary, [the mother] has a long history of acting out behavior. She has difficulty accepting responsibility for parenting her children and an inability to defer her own needs to provide for her children. Her high dependency needs are a major therapeutic issue. Her impulsiveness, depression, and anger make relationships difficult and problematic. . . . She has very limited knowledge regarding developmental needs and an even more limited knowledge of the need for structure and routine for young children. She is emotionally immature and her current functioning level is similar to a typical 15 or 16 year old.

The mother also has a history of failure to follow rules. She has been in legal trouble for theft, domestic abuse of P.S.-V.'s father, and driving without a license. The mother did not comply with the clear rules set by DHS for trial home visits with E.V., resulting in the reversion from semi-supervised to supervised visits with the children once a week.

Due to the limited visitation, the mother was not present for E.V.'s major meltdowns, and, thus, has not developed an improved ability to deal with his behaviors. As recently as a week prior to the termination hearing, the mother demonstrated she did not understand E.V.'s mental health needs.[2]

The mother admitted that she did not maintain meaningful and significant contact with P.S.-V., indicating a limited interest in reunification with P.S.-V.

At the time of the termination hearing, E.V. had been out of the mother's care for twenty-two months, and P.S.-V. had been out of her care for twenty months. In the termination order entered February 24, 2016, the juvenile court stated:

> In the twenty-two months since [E.V.]'s removal, [the mother] has shown little progress in dealing with her own personal issues and the mental health concerns that prevent her from appropriately parenting her children. [The mother] has continuously failed to recognize how the chaos and instability in her life and the lives of her children has negatively impacted and affected her children. Her lack of insight and empathy is extremely concerning and there is no indication that this has been addressed or dealt with through her therapy. She still remains financially dependent on others, currently her new boyfriend/fiancé . . . is paying basically all of her living expenses . . . .

---

[2] At that time, she did not speak with E.V.'s therapist before telling E.V. she had given birth to her babies and would not be attending visitation that week. This caused E.V. to have a major meltdown at school. The mother did not understand why E.V. was upset by the incident and stated that she assumed he would be happy to hear her news.

The court terminated the mother's parental rights as to E.V. under Iowa Code section 232.116(1)(d), (f), and (i) (2015), and pursuant to section 232.116(1)(b), (d), (h), and (i) as to P.S.-V. The mother now appeals.

## II. Standard of Review.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis.

We employ a three-step analysis when considering termination of parental rights:

> First, the court must determine if the evidence proves one of the enumerated grounds for termination in section 232.116(1). If a ground is proven, the court may order the termination. Next, the court must consider whether to terminate by applying the factors in section 232.116(2). Finally, if the factors require termination, the court must then determine if an exception under section 232.116(3) exists so the court need not terminate.

*In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (internal citations omitted).

**A. Grounds for Termination.** We find clear and convincing evidence supports termination of the mother's parental rights under section 232.116(1)(f)[3] as to E.V. and section 232.116(1)(h)[4] as to P.S.-V.

---

[3] A child four years of age or older, adjudicated CINA, who has been out of the care of the parent for twelve of the last eighteen months, and cannot be returned to the parent's custody.

[4] A child three years of age or younger, adjudicated CINA, who has been out of the care of the parent for six of the last twelve months, and cannot be returned to the parent's custody at present.

At the time of the termination hearing, E.V. was six years old, was adjudicated CINA, and had been out of the mother's care for twenty-two months. P.S.-V. was three years old, was adjudicated CINA, and had been out of the mother's care for twenty months. The mother disputes the juvenile court's determination that the children could not be returned to her care.

Although she was provided DHS services for nearly two years, the mother made only minimal progress by the time of the termination hearing. The mother attended mental health therapy but did not adequately address the concerns expressed in the psychological evaluation. She obtained more consistent housing only by relying on another individual to pay the rent. The mother maintained employment, but she worked very limited hours and depended on another individual to pay the totality of her bills except her cell phone bill.

The mother had limited contact with the children, nearly all of which was supervised. E.V. was placed in the mother's care for trial weekend visitation only twice before the visitation reverted to fully supervised visits due to the mother's inability to follow the safety plan. The mother interacted with P.S.-V. only during weekly two-hour supervised visits and did not consistently attend scheduled visits with P.S.-V.

While the children maintain a bond with their mother, they have been in the full-time care of other individuals for nearly two years. And while the mother made only minimal improvement in her parenting abilities, her responsibilities increased twofold due to the birth of the twins. She had not developed the knowledge or skills necessary to ensure the safety of the other children in the home.

The record supports by clear and convincing evidence that E.V. and P.S.-V. could not be returned to the care of the mother at the time of the termination hearing, and grounds exist for termination of her parental rights under sections 232.116(1)(f) and (h).[5]

**B. Best Interests.** Termination of the mother's parental rights is also in the best interests of the children.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

E.V. and P.S.-V. have been out of the mother's care for nearly two years. This is well over the limitation periods of sections 232.116(1)(f) and (h). E.V.'s current foster care placement provides him the level of care and one-on-one attention necessary to address his behavioral issues. P.S.-V. has been in the care of his father for half of his life, and is doing well in a safe and structured environment. The children's best potential for long-term nurturing and growth will be served by termination of the mother's parental rights. *See* Iowa Code § 232.116(2).

---

[5] Because we affirm on the grounds of sections 232.116(1)(f) and (h), we need not address the mother's claims as to the other grounds for termination. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

**C. Exceptions or Factors against Termination.** The mother contends that section 232.116(3)(c) applies to avoid termination of her rights.[6] Although we recognize the existing parent-child bond, the record does not support a finding that the parent-child relationship with each child weighs against the need for termination. In fact, the evidence reflects that the parent-child relationship has been detrimental to the children's development and emotional growth. Accordingly, section 232.116(3)(c) will not prevent the termination.

## IV. Conclusion.

There is clear and convincing evidence that grounds exist for termination, termination is in E.V. and P.S.-V.'s best interests, and no exception precludes the need for termination of the mother's parental rights. We therefore affirm.

**AFFIRMED.**

---

[6] Section 232.116(3)(c) states the court need not terminate if the court finds "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."